**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )   Chapter 15 |
| | ) |
| GRUPO ANTOLIN-IRAUSA, S.A.U.,[1] | )   Case No. 26-11679 (____) |
| | ) |
| Debtors in a Foreign Proceeding. | )   (Joint Administration Requested) |
| | ) |

**DECLARATION OF**
**FERRAN FOIX MIRALLES IN SUPPORT OF**
**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN**
**PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE,**
**AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Ferran Foix Miralles, declare under penalty of perjury as follows to the best of my knowledge, information, and belief:

1. I am duly admitted to practice law in Spain, am a partner with, co-head of Capital Markets at, and head of the London office of Gómez-Acebo & Pombo, and serve as counsel to Grupo Antolin-Irausa, S.A.U. and its affiliated debtors (collectively, the "Debtors")[2] in connection with the Spanish Proceeding (as defined below). I am familiar with pre-insolvency proceedings under Royal Legislative Decree 1/2020, of May 5, approving the consolidated text of the Insolvency Law (as amended, restated, and/or replaced, the "Insolvency Law") established by Law 16/2022, of September 5, amending the consolidated text of the Insolvency Law, approved by Royal Legislative Decree 1/2020, of May 5, for the implementation of Directive (EU) 2019/1023

---

[1]   A complete list of each of the Debtors in these chapter 15 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Antolin. The location of Debtor Grupo Antolin-Irausa, S.A.U.'s corporate headquarters and the Debtors' service address in these chapter 15 cases is C/Vitoria número 307 / Burgos / 09007 / Spain.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Declaration of the Foreign Representative (as defined herein).

of the European Parliament and of the Council of June 20, 2019 on frameworks for preventive restructuring, discharge of debts and disqualifications, and measures to increase the efficiency of restructuring, insolvency, and debt discharge proceedings, and amending Directive (EU) 2017/1132 of the European Parliament and of the Council on certain aspects of company law. For the past several months, my team and I have worked closely with the Debtors on their current restructuring process. As such, I am generally familiar with the Debtors' restructuring and negotiation efforts.

2. I submit this declaration (this "Declaration") in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition") filed by Cristina Blanco Santo Tomás (the "Foreign Representative") in her capacity as the authorized foreign representative of the Debtors, each of which is a party to a foreign proceeding in Spain (the "Spanish Proceeding") before the *Sección de lo Mercantil del Tribunal de Instancia de Burgos, Plaza número 1* (the "Spanish Court"). The Spanish Proceeding was commenced by the filing of the application for homologation of a restructuring plan with the Spanish Court on July 10, 2026 (as amended, restated, or otherwise modified from time to time, the "Spanish Restructuring Plan"), and I am personally familiar with the Spanish Proceeding.

3. Shortly thereafter, the Foreign Representative filed voluntary petitions for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") on behalf of the Debtors. All facts set forth in this Declaration are based on: (a) my knowledge; (b) my review of relevant documents; (c) information supplied to me by employees and members of the Debtors' management and/or their other advisors; (d) information that I have received from personnel of Gómez-Acebo & Pombo working directly with me or under my supervision or direction; or (e) my

2

opinion based upon my experience and knowledge of Spanish law. I am not being compensated specifically for this testimony other than through payments received by Gómez-Acebo & Pombo as a law firm that has been retained by the Debtors in connection with the Spanish Proceeding. I am over the age of eighteen, and if I were called upon to testify, I could and would testify competently to the facts set forth herein.

### Educational and Professional Background

4.      I am admitted to the Spanish (Barcelona) Bar and I am a partner at Gómez-Acebo & Pombo, where my broad-ranging practice focuses on capital markets, corporate finance transactions, and restructurings. I earned my law degree from University of Navarra (Spain) in 1999, a master in Taxation from ESADE Law School in 2000, and an LL.M. from New York University in 2003. I was admitted to the Spanish Bar in 1999 and joined Gómez-Acebo & Pombo in 2009, where I later became a partner and head of the London office. I have participated in major Spanish and international refinancing and restructurings, including Abengoa, Celsa Group, Intrum, and Codere.

### Statements of Spanish Law and Practice

**I.      General Background of Applicable Spanish Insolvency Law.**

5.      Spanish insolvency law provides for court-supervised pre-insolvency restructuring proceedings and insolvency proceedings. The two main types of insolvency proceedings are rescue proceedings and liquidation. Insolvency proceedings are further divided into voluntary and compulsory proceedings. Voluntary proceedings are initiated by the debtor, and compulsory proceedings are initiated by creditors. The pre-insolvency restructuring proceedings, pursuant to which the Debtors commenced the Spanish Proceeding, is further described herein.

6.      The court-supervised pre-insolvency restructuring proceedings are generally public, although the Insolvency Law permits these proceedings to be conducted on a confidential

3

basis in certain circumstances with respect to foreign subsidiaries—in the Spanish Proceeding, the application for homologation was requested on a non-confidential and non-reserved basis with respect to all Debtors, reflecting the Debtors' position that the center of main interests ("COMI") of all foreign subsidiaries is in Spain. The application also included a subsidiary request—applicable only if the Spanish Court were to determine that a particular foreign subsidiary's COMI is not located in Spain—that such subsidiary's portion of the proceeding instead be treated on a reserved basis pursuant to Article 755 of the Insolvency Law.

7. Restructuring proceedings in Spain share some key features with chapter 11 proceedings in the United States: (a) an automatic stay that prohibits creditors from commencing legal actions against a company to obtain payment of a prepetition claim, subject to few exceptions based on the type of proceeding initiated; (b) creditors are separated into classes for voting purposes based on the type of claims held; and (c) payment priority rules apply in a hypothetical future insolvency scenario.

**A.      Spanish Restructuring Proceedings Generally.**

8. Spanish restructuring proceedings are governed by the Insolvency Law. In 2022, the Insolvency Law introduced a new tool, referred to as a restructuring plan, which can amend or modify a company's capital structure (including debt and equity) to assure the company's viability for the medium and short term. Specifically, a restructuring plan can affect or modify the composition, terms and conditions, or structure of a debtor's assets, liabilities, and/or equity, including sales of assets, business units, or the company as a whole, as well as affect operational changes. A restructuring plan can affect nearly all claims of a debtor, other than tort claims, claims of employees, or certain specific financial guarantees. Claims resulting from public laws can be affected by the restructuring plan but are significantly restricted.

4

9. The debtor or creditors representing more than fifty percent of claims affected by the proposed restructuring plan may request that the court appoint a restructuring expert to assist in connection with the restructuring plan and to issue any reports or certificates that are required in connection with the homologation process. In cases in which an entire class of affected creditors does not consent to the restructuring plan, a restructuring expert must be appointed.

10. When organizing creditors into classes for purposes of voting on the restructuring plan, creditors shall be grouped together based on a common interest, which is primarily determined by their insolvency ranking. Under the Insolvency Law, claims with different insolvency rankings (privileged, ordinary, or subordinated) must be placed in different classes. Claims of the same rank may be separated into different classes where there are sufficient reasons to do so, including, for example, the financial or nonfinancial nature of the claim, potential conflicts of interest, or how the claims are affected by the restructuring plan. Secured claims over assets of the debtor shall be grouped together in one separate class unless the heterogeneity of the encumbered assets justifies further separation. Public-law claims must also form a separate class among claims of the same insolvency rank. The restructuring plan must respect the applicable equal-treatment and nondiscrimination protections for classes of the same rank. Claims with the same ranking can receive different treatment. However, treatment of similarly ranked claims must be economically equivalent.

11. All creditors affected by the proposed restructuring plan are entitled to vote. A class accepts the restructuring plan if more than two-thirds of unsecured claims, by monetary value, and more than three-fourths of secured claims, by monetary value, vote in favor of the plan.

12. For purposes of voting on a restructuring plan, where the plan affects claims governed by a syndication agreement, the contractual provisions governing the voting procedure

5

and the exercise of voting rights will be respected. The contractual statutory majorities applicable to the relevant class will apply to the syndicate, unless the syndication agreement itself provides for a lower majority to approve the relevant effects. If the required majority votes in favor, all syndicated claims will be deemed to have accepted the restructuring plan. If the required majority is not obtained, votes will be counted individually, unless the syndicated claims form a single class, in which case the restructuring plan will be deemed not to have been approved by that class. Unless they are bound by the contractual terms of the syndication agreement itself, creditors that did not vote in favor of the plan may oppose or challenge it in accordance with the applicable provisions of the Insolvency Law.

13. The court-supervised process for approval of a restructuring plan, referred to as homologation, prevents, among other things, future claw-backs of the restructuring plan transactions, allows the effects of the restructuring plan to be extended to nonconsenting creditors, and protects interim and new financing.

14. A debtor is eligible to file a request for homologation of a restructuring plan if the debtor is facing: (1) current insolvency; (2) imminent insolvency, whereby a debtor expects it will not be able to meet its payment obligations as they come due within three months; or (3) probable insolvency, whereby a debtor expects it will not be able to meet its payment obligations as they come due within two years. The Debtors fall within prong (3) of the grounds for eligibility set out above. If the requirements are met, a debtor or its creditors may file a restructuring plan and request homologation with a competent court within whose area of jurisdiction the COMI is located. Under the Insolvency Law, a debtor's COMI is presumed to be the place of its registered office, although such presumption is rebuttable. Any change in the registered office within the six months prior to filing will not be considered for purposes of insolvency jurisdiction.

15.     In order to be eligible for homologation, the restructuring plan has to be approved in one of three ways: (1) the plan receives unanimous approval from all classes; (2) the plan is approved by a majority of classes, including at least one class of creditors with special or general privilege[3]; or (3) at least one class that is reasonably expected to receive a recovery under the restructuring plan (based on a valuation of the debtor company as a going concern) approves the plan.

16.     Once the homologation request is filed, the Spanish court can accept the request for processing, and the related order is then published in the Public Insolvency Register.  Upon acceptance of the homologation request, the automatic stay under Spanish law becomes effective. The order accepting the request for approval results in a prohibition on initiating enforcement proceedings against the debtors and the suspension of any such proceedings already initiated, effective until the homologation of the restructuring plan is decided and resolved.  During this time, the debtors can continue to operate in the ordinary course of business.  The debtor's board of directors and management continue to run the company.

17.     Once the Spanish court has analyzed the request for homologation and the restructuring plan, it issues an order granting or denying homologation of the plan.  This homologation order is published in the Public Insolvency Register.  Once published, the restructuring plan can be challenged within fifteen business days.

18.     According to Article 654 of the Insolvency Law, a restructuring plan that was unanimously approved by its classes may be challenged by any affected creditor that did not vote in favor of the plan for the following reasons: (1) the communication, content, and form did not

---

[3]     Under the Insolvency Law, special privilege claims are secured by relevant assets and paid from the sale of those assets, and general privilege claims are unsecured claims that have payment priority over general insolvency claims.

meet the applicable legal requirements; (2) the classes were not properly formed or the approval did not meet the legal requirements; (3) the debtor is not in a state of probable insolvency, currently insolvent, or imminently insolvent; (4) the plan is not viable—that is, it does not offer a reasonable prospect of avoiding insolvency or guarantee the viability of the debtor in the short and medium term; (5) claims of a same class were not treated equitably with other credits of the same class; (6) claims have been reduced greater than necessary to ensure the viability of the company; (7) the creditors are impaired more than they would have been in a liquidation scenario; and (8) the debtor failed to comply with tax and social security obligations.

19. Further, pursuant to Article 655 of the Insolvency Law, a restructuring plan that has not been approved by all classes of affected claims may be challenged on the grounds set out in Article 654 by any affected creditor that did not vote in favor of the plan, regardless of whether or not such creditor belongs to a class that approved the plan. In addition, affected creditors that did not vote in favor of the plan and belong to a class that did not approve it may challenge the plan on the following additional grounds: (1) the plan was not approved by the requisite classes in accordance with the applicable statutory majorities; (2) a class of affected creditors is to receive, as a result of the plan, rights, shares, or participations with a value exceeding the amount of its claims; (3) the class to which the challenging creditor belongs is to receive less favorable treatment than any other class of the same rank; (4) the class to which the challenging creditor belongs is to maintain or receive rights, shares, or participations with a value lower than the amount of its claims while a lower-ranking class or the shareholders receive any payment or retain any right, share or participation in the debtor under the plan; and (5) where the plan affects public-law claims, the debtor has failed to comply with its obligation to be up to date with its tax and social security obligations. As an exception to the absolute priority rule referred to in item (4), the court may

8

nevertheless confirm the plan if the deviation is necessary to ensure that the business is viable and the affected creditors are not unfairly prejudiced.

20.    As a general rule, if the challenge is upheld, the judgment will declare that the effects of the plan are not extended to the successful challenging creditor only, while the plan will remain effective vis-à-vis the other creditors and shareholders.  However, if the challenge is upheld on the basis that the requisite majorities were not met or that the classes were improperly formed, the judgment will declare the plan ineffective as a whole.

**B.     The Spanish Proceeding.**

21.    The Debtors requested the appointment of Lexaudit Concursal, S.L.P. as restructuring expert (the "Restructuring Expert").  The Spanish Court issued an order approving the appointment of the Restructuring Expert on May 14, 2026, which was amended by another order issued on June 1, 2026.[4]

22.    A sufficient majority of the affected creditors approved the terms of the Spanish Restructuring Plan, and the Spanish Restructuring Plan was signed and submitted for homologation on July 10, 2026.  The Spanish Court issued an order admitting the application for homologation on July 17, 2026, triggering the automatic stay under Spanish law that results in a prohibition on initiating enforcement proceedings against the Debtors and the suspension of any such proceedings already initiated, effective until the homologation of the Spanish Restructuring Plan is decided and resolved.  Additionally, pursuant to the Spanish Court's order accepting the Homologation Application, the stay was also extended to any enforcement proceedings with

---

[4]    The May 14, 2026 order was amended at the request of the Debtors by another order dated June 1, 2026, for the purpose of expressly including in the ruling that the appointment of the Restructuring Expert was made for all of the Debtors.

respect to the Share Pledge and any acceleration rights on account of the Homologation Request were deemed unenforceable.

23.     The Debtors that are foreign subsidiaries have their COMI in Spain because they operate on a centralized contractual organizational model, the production units are managed from Spain, the governing bodies are managed from Spain, key intangible assets are owned in Spain, and third parties recognize Spain as the centralized management of the Debtors.

24.     The Spanish Court may homologate the Spanish Restructuring Plan within approximately fifteen business days of publication of the order admitting the application for homologation for processing in the Public Insolvency Register, although homologation is expected to occur in September or October 2026 in light of Spanish judicial holidays during the month of August.  The Debtors continue to operate in the ordinary course of business under the protection of a limited automatic stay against creditors' enforcement actions during the Spanish Proceeding, as discussed above.

## II.     The Spanish Proceeding Is a Foreign Main Proceeding.

25.     To the best of my information and belief, the Spanish Proceeding is a judicial proceeding under Spanish law relating to the adjustment of debt of the Debtors, the purpose of which is a financial restructuring.  The Spanish Proceeding allows for participation by all affected creditors of the Debtors.  The Spanish Restructuring Plan does not affect trade creditors, creditors holding public-law claims, or certain contingent debt that is fully secured by wholly liquid assets.  All parties affected by the Spanish Restructuring Plan are entitled to vote.  Accordingly, the Spanish Proceeding considers the rights and obligations of all of the Debtors' affected creditors rather than a single creditor, although individual rights are also taken into account as challenge methods are established.

26.     To the best of my information and belief, the Spanish Proceeding is judicial in character and, pursuant to the Insolvency Law, the Spanish Court has exclusive jurisdiction over the Spanish Proceeding.

27.     To the best of my information and belief, the Spanish Proceeding subjects the Debtors and the Spanish Restructuring Plan to the supervision of the Spanish Court.  Consistent with the principle of minimal *ex post* judicial intervention that governs the Spanish restructuring plan regime, the Debtors' board of directors and management remain in possession and continue to operate the Debtors' business in the ordinary course, no insolvency administrator is appointed, and the Spanish Court does not generally pre-authorize sales of the Debtors' assets or the granting of security interests.  The Spanish Court's role is to homologate (*i.e.*, judicially approve) the Spanish Restructuring Plan already approved by the requisite classes of creditors and thereby, among other things, to extend the Spanish Restructuring Plan's effects to dissenting creditors and protect interim and new financing and the acts and transactions implementing the plan against rescission.  The Spanish Court also oversees the Spanish Proceeding by appointing the Restructuring Expert to assist in relation with the Spanish Restructuring Plan and issuing the required reports.

28.     As I have been informed, the Spanish Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code, and the COMI of the Debtors, as the term is used in section 1502(4) of the Bankruptcy Code, is located in Spain.  To the best of my information and belief, and as identified in the *Declaration of Cristina Blanco Santo Tomás Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the*

*Bankruptcy Code* (the "Declaration of the Foreign Representative"), filed contemporaneously herewith, the Spanish Proceeding is the only proceeding related to the adjustment of debts pending for the Debtors that is both (a) a "foreign proceeding" and (b) pending in the country of the Debtors' center of main interests; therefore, the Spanish Proceeding is the only proceeding that qualifies for recognition as a foreign main proceeding.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 20th day of July 2026
Madrid, Spain

/s/ Ferran Foix Miralles
Ferran Foix Miralles
Partner
Gómez-Acebo & Pombo